# CHARLES SHINKLE

## *v.*

## ISAAC LETCHER.

1. FRAUDULENT TITLE—*not cured by decree in confirmation thereof—fraud.*
Where a vendee of lands, at an execution sale, knowing that the judgment upon
which his title rests is satisfied, obtains a decree setting aside conveyances,
fraudulent as to judgment creditors, and in confirmation of title in himself, still
concealing from adverse claimants his knowledge that the judgment is satisfied,
his title is fraudulent, and may be impeached in equity, notwithstanding the
former decree in relation to the same title.

1. FORMER ADJUDICATION—*when not conclusive.* The general rule is, that a former adjudication is conclusive between parties and privies, as to the subject matter involved.   But this rule cannot be invoked to aid a party who knew his claim was groundless at the time of the former adjudication, in a suit against him by the parties defrauded, where not estopped by their want of diligence.

3. DILIGENCE—*in relation to papers on the public files.*   The existence of a receipt or acquittance of a judgment on file with the judgment papers, at the time of a chancery proceeding to enforce a title deduced from such judgment, being known to the party enforcing the title, but unknown to the defendants in such proceeding, will not estop these defendants from setting up the acquittance in a bill to review or impeach the former decree, upon the ground of a want of diligence in the former suit:   *Semble*, that the rule would be different where all the parties were equally in ignorance of such a paper.

WRIT OF ERROR to the Circuit Court of Montgomery county; the Hon. EDWARD Y. RICE, Judge, presiding.

The facts are sufficiently stated in the opinion of the court.

Mr. T. G. C. DAVIS, for the plaintiff in error.

Messrs. J. & D. GILLESPIE, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit in chancery, commenced in the Madison Circuit Court, to the May term 1864, by Charles Shinkle and against Isaac A Letcher and a number of other persons named in the bill as defendants.   It alleges, that James L. D. Morrison filed his bill in the Madison Circuit Court in 1852, against Isaac A. Letcher, Mary Metcalf, Robert Duncan, James Duncan, Charles Cook, William Hadley, the unknown heirs of John Duncan, deceased, Jonathan Duncan, Ellen Ayres, Ann Ayres, Peter S. Ayres, heirs-at-law of Riscarick Ayres, deceased, and Louis E. Worcester, his administrator, and that complainant became a defendant to that suit; that in that bill Morrison charged that Edward Norton recovered a judgment

in April, 1842, against James Duncan and Riscarick Ayres, for the sum of $2,000, and that Duncan had, previous to the recovery of the judgment, to defraud Norton, conveyed to Letcher the several tracts of land lying in Madison county for the pretended consideration of $3,225, when, in fact, no consideration was paid, and that Duncan remained in possession until the time of his death.

That Morrison further alleged in that bill, that Letcher had confederated with John Duncan, a brother of James Duncan, and conveyed the lands to him for the expressed consideration of $2,500, but nothing was paid, and this conveyance was made to defraud Norton; that James Duncan died intestate, and Charles Cook became the administrator of his estate, and occupied these lands until January, 1848; that Hadley administered on John Duncan's estate; that several writs of *fi. fa.* had been issued, and various sums of money collected so as to reduce the judgment to the sum of $767; that Norton had given notice to Cook, the administrator, more than three months before the execution was issued on which the land was sold, that it would be sued out; that when the sheriff made a sale of the lands, Morrison became the purchaser for $270, the sum alleged to be then due on the judgment; that the sheriff subsequently made and delivered to him a deed for the lands. Morrison prayed in his bill to have these deeds, alleged to have been fraudulently made, set aside and the title vested in him; that on a hearing the relief sought was granted.

This decree was subsequently affirmed in the Supreme Court. Shinkle further alleged in his bill, that Morrison subsequently conveyed the lands to William J. Matthews and Richey A. Davis, the wife of Thomas Davis, and that Matthews and Davis and wife conveyed to Jackson M. Johnson, in trust; that Hadley, as administrator of John Duncan, sold the lands, under an order of court, to Jonathan Duncan, for $800, and he conveyed a part of the land to complainant

for $1,200, and another part for $225 ; that James Duncan and Riscarick Ayres had paid off and satisfied the judgment in favor of Norton and against them, before the execution was issued under which Morrison purchased.

That Norton at the time executed an acquittance or release of the judgment to James Duncan, which is this :

"EDWARD NORTON,
          vs.
JAMES DUNCAN AND RISCARICK AYRES.

" Received from James Duncan and Riscarick Ayres, in cash, a note, and One Hundred and Sixty acres of land in the County of Clinton, and State of Illinois, conveyed to me by Geo. T. M. Davis, by deed of this date, five hundred dollars in full satisfaction and discharge of all my interest, right, title, claim and demand in and to the judgment recovered by me against them, in the St. Clair Circuit Court, being the only judgment I ever obtained against them.

" Witness my hand and seal, this 7th day of March. A. D. 1844.

                    "EDWARD NORTON, [SEAL.]

" In presence of

     " GEO. T. M. DAVIS.

     " G. A. SUTTER."

The bill further alleges that Morrison knew of this release years before the sale was made by the sheriff of the lands to him; that he took an assignment from Gustavus Koerner and James Shields of a pretended interest in the judgment, which was made on the 10th of January, 1850, and long after the execution of the acquittance by Norton, when Koerner, Shields and Morrison well knew that Norton had executed it, and that the judgment was satisfied, paid off and discharged ; that Shinkle was in possession of the S. E. qr., 20, (except 26 acres) T. 3. N., R. 8, W., of which Morrison seeks to dispossess him. That he has been in possession for about ten years; that he had been in possession of the other tract, until about

the 10th of March, 1863, when Matthews and Thomas Davis took possession and claim under Morrison, and are committing waste. The bill charges notice of the fraud on all of the defendants before they severally acquired title to the premises; that had he known of the existence of the acquittance he would have set it up in his answer to Morrison's bill, but was not aware of it until after the decree was affirmed by the Supreme Court; that the decree obtained by Morrison was fraudulent and should be set aside, and there is a prayer to that end.

To this bill Morrison and other defendants filed a demurrer and assigned various causes. It was sustained, and a decree rendered dismissing the bill. To reverse that decree the cause is brought to this court, and various errors are assigned on the record.

The bill charges fraud on the part of Morrison, in acquiring title by means of a judgment which had been satisfied, of which he had knowledge at the time the sale was made, and he became the purchaser. If this is true, and the demurrer admits the fact, there can be no question that it was a fraud upon the rights of plaintiff in error, who has acquired the title of Duncan's heirs. If the judgment had been satisfied, and Morrison was cognizant of the fact, it was a gross fraud on his part to use it to purchase the land, and he could have had no right to the relief he obtained by his bill. It was a fraud upon the rights of the true owners of the land. If the judgment was satisfied, and Morrison knew it, then the purchase by Morrison under the execution, did not in equity divest Duncan's heirs of the title, and in equity, the purchaser at the administrator's sale acquired the title, and plaintiff in error succeeded to his rights by the conveyance to him.

It is, however, urged that even if the judgment was satisfied, the acquittance, if it operated as a discharge of the judgment, was on file among the papers in the case, and being a matter of record, that the plaintiff in error had notice,

and was bound to set it up, or failing to do so, he was bound by the decree in Morrison's favor, from relying upon it in this suit. This bill alleges that plaintiff in error had no knowledge of its existence, or he would have set it up, and relied upon it as a defense to that proceeding. It appears that the judgment itself was not in form satisfied upon the record, and it was equally within the reach and knowledge of Morrison as of the plaintiff in error, and the bill also charges actual notice that the judgment had been satisfied. If true, and it is admitted by the demurrer, then Morrison has obtained, with full knowledge of all the facts, an unreasonable, unjust and fraudulent advantage of plaintiff in error, and seeks to hold it by force of his decree in the former suit.

As a general rule, parties are required to present all claims and defenses of which they have knowledge, and which may be litigated in a suit instituted between them, or they will be precluded from their assertion in a subsequent proceeding. Here was an apparent defense to Morrison's bill, and it was not set up and relied upon by plaintiff in error when vital interests were involved. Nothing less than the title to a large quantity of valuable land. Hence, we may reasonably infer that had plaintiff in error known of the receipt, he would certainly have relied upon it to defeat Morrison's recovery. It would seem to be highly probable that he had no knowledge in fact, of its existence. And if Morrison was only engaged in the prosecution of a groundless claim which he knew had no existence, and that it was a fraud, and highly unjust and iniquitous to enforce, it would certainly require less diligence on the part of plaintiff in error to let him in to rely upon the receipt, than if Morrison's claim had, in his belief, been just and equitable. When plaintiff in error saw that the judgment docket contained no entry of satisfaction, he, no doubt, concluded that it was unsatisfied, as such entries are usually made by the clerk when they are satisfied. He was, no doubt, misled by this fact, and prevented from searching the files. He had a right

to suppose that all payments had been credited or noted on the judgment docket, and yet from the averments in Morrison's bill, it appears to have been open and unsatisfied.

Had Morrison acted in good faith, and had he been ignorant of the satisfaction of the judgment, then a very different question of diligence would have been presented. But we are of the opinion that, as it stands confessed by the demurrer, the proceeding by Morrison was fraudulent, and designed by him for fraudulent purposes; that plaintiff in error is not estopped from setting up the receipt to defeat the inequitable advantage obtained by Morrison. And if his grantees had notice of the fraud, as the demurrer confesses they had, they occupy the same position to the case as did their grantor.

It is, however, insisted that the receipt was only intended as a satisfaction of a portion of the judgment; that the attorneys who obtained it had an interest in it, and that Norton did not intend to, nor did he, release or discharge that portion, and that Morrison claims under the attorneys. This may all be true, but it does not appear in the bill; but it is alleged that the receipt was given in full satisfaction of the judgment, and it is admitted by the demurrer. If such are the facts, they should be set up in an answer, where they may, no doubt, be made available. The receipt is executed by the plaintiff, and it states that it is in full satisfaction and discharge of all his interest and claim in the judgment. It appeared by the record, that he had the entire interest in the judgment. He was sole plaintiff, and the legal presumption would be that he had the entire interest and benefits which it might confer. In equity, others might acquire rights by becoming holders, either in whole or in part, and such holders, acting in good faith, without notice, would be protected. And if Morrison purchased of persons having an equitable interest in the judgment, he acquired their title, and would have the right to explain this receipt as he would any other. If Norton, in satisfying his interest, did not, and the parties so understood it, intend to

satisfy more than his equitable share of the judgment, then Morrison may show that fact, and thereby establish a foundation to support his purchase at the sheriff's sale, especially so, as plaintiff in error acquired his title without knowledge of, or reference to, this receipt. When he purchased, it was with the notice only which the record afforded without the receipt. Whatever the proof may show, we are of the opinion that the allegations of the bill show a right to relief, and the demurrer should have been overruled and the defendant permitted to answer. The decree of the court below is, therefore, reversed and the cause remanded for further proceedings.

*Decree reversed.*